IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                    :
      Plaintiff,     :
                    :
vs.              :         Case No. 4:13-cr-00088
                    :
SEAN MICHAEL WARD,    :   SENTENCING HEARING TRANSCRIPT
                    :
      Defendant.    :
- - - - - - - - - - - - - X


                        Courtroom, First Floor
                        U.S. Courthouse
                        123 East Walnut Street
                        Des Moines, Iowa
                        Wednesday, September 10, 2014
                        2:00 p.m.


BEFORE:  THE HONORABLE STEPHANIE M. ROSE, Judge.


APPEARANCES:

For the Plaintiff:       CLIFFORD D. WENDEL, ESQ.
                        Assistant U.S. Attorney
                        U.S. Courthouse Annex
                        110 East Court Avenue, Room 286
                        Des Moines, Iowa  50309-2053

For the Defendant:       ERIN M. CARR, ESQ.
                        Carr & Wright, P.L.C.
                        300 Walnut Street, Suite 140
                        Des Moines, Iowa  50309




                KELLI M. MULCAHY, CSR, RMR, CRR
                   United States Courthouse
             123 East Walnut Street, Room 115
                  Des Moines, Iowa 50309

1                     P R O C E E D I N G S

2              (In open court.)

3         THE COURT:  Thank you.  You can be seated.

4              We are here today in the matter of United States vs.

5    Sean Michael Ward.  It's Case No. 4:13-cr-00088.  With us on

6    behalf of the United States is AUSA Cliff Wendel.  On behalf of

7    Mr. Ward is Erin Carr.  Mr. Ward appears personally.

8    Representing the United States Probation Office is Kristin

9    Herrera.

10             Mr. Ward, do you recall being in court on May 19th and

11   entering a guilty plea to a one-count indictment that was filed

12   against you in July of 2013?

13        DEFENDANT WARD:  Yes, Your Honor.

14        THE COURT:  And specifically, you pled guilty to

15   possessing a firearm as a felon; is that right?

16        DEFENDANT WARD:  Yes, Your Honor.

17        THE COURT:  And you understand that this offense is

18   punishable by up to ten years in prison, a fine of up to

19   $250,000, supervised release of up to three years, and a $100

20   special assessment?  Do you remember those penalties from the

21   time of your plea hearing?

22        DEFENDANT WARD:  Yes, Your Honor.

23        THE COURT:  And you understand you're here today to be

24   sentenced?

25        DEFENDANT WARD:  Yes, Your Honor.

1          THE COURT:  The Court has received and read the

2   Presentence Investigation Report.  The most recent report is

3   dated August 14th of 2014, and it's filed at Docket 46.

4          I've also received and read the original sentencing

5   memorandum filed by Mr. Carr on your behalf, Mr. Ward, at Docket

6   49, as well as the supplemental memo filed at Docket 53, and I

7   have received letters from your daughter, mother, former

8   landlord, and pastor.

9          I have also received and read the original sentencing

10  memorandum filed by the Government at Docket 48 as well as the

11  Government's supplemental motion filed -- or I should say

12  memorandum filed at Docket 52.

13         I appreciate very much the parties taking the time to

14  research and supplement their memoranda related to the armed

15  career criminal application here.  I have reviewed the cases

16  that you both cited.  I agree with your analysis.  I think here

17  that Mr. Ward does not qualify as an armed career criminal.

18         Mr. Wendel, on behalf of the United States, have you

19  had a chance to review the Presentence Investigation Report?

20         MR. WENDEL:  I have, Your Honor.

21         THE COURT:  And having resolved that armed career

22  criminal issue that we had talked about some weeks back, it

23  looks to me like there are three remaining issues to be resolved

24  today; the number of guns involved in the offense, whether the

25  gun involved in the offense was stolen, and whether or not that

1  gun was possessed in connection with another felony offense.

2          Are there any other issues, from the Government's

3  perspective, that we need to resolve today?

4          MR. WENDEL:  No, Your Honor.

5          But with relation to those issues, at the time that

6  the prior sentence was set, I had the witnesses available, and

7  after I talked to them on the first issue and the last issue, in

8  other words, the number of firearms and use in another felony,

9  two of the witnesses recanted their testimony from the time of

10 the original arrest of Mr. Ward, and, based on that recanting of

11 their testimony, the Government will not be proving up those two

12 issues, which would be the number of guns and the use of the

13 firearm in relation to another felony.

14         THE COURT:  Which two witnesses recanted their

15 information?

16         MR. WENDEL:  The two females, Ms. Wynter Hudson and --

17 I have it -- Ms. Sarah Clendaniel.

18         THE COURT:  Okay.  So the only issue, from the

19 Government's perspective, left to resolve is whether the firearm

20 was stolen?

21         MR. WENDEL:  Correct.

22         THE COURT:  Mr. Carr, did you have a chance to review

23 the presentence report with your client?

24         MR. CARR:  Yes, I did, Your Honor.

25         THE COURT:  Could you just make a brief record of how

1  you did that?  In other words, did you meet with him in person,

2  did you mail it to him?

3          MR. CARR:  Yes, Your Honor.  I did meet with him in

4  person.  We had quite an extensive meeting at the Polk County

5  Jail where we went through the presentence report line by line,

6  paragraph by paragraph, noting what it was that we wished to

7  object to, if there were any changes that need to be made.  We

8  reached a mutual resolution as to what we wanted to object to

9  and then I filed my objections as noted on the Court's docket.

10  So that meeting did take place in person.  It was prior to my

11  filing my objections.

12          THE COURT:  Thank you, Mr. Carr.

13          And based upon the discussion I've had with

14  Mr. Wendel, it looks like the only issue, other than a

15  determination of ultimate sentence to be resolved here today, is

16  that issue related to the stolen weapon.  Is that your

17  understanding as well?

18          MR. CARR:  That's my understanding, Your Honor.

19          THE COURT:  Okay.  Mr. Ward, did you have plenty of

20  time to look at your presentence report with Mr. Carr?

21          DEFENDANT WARD:  Yes, Your Honor.

22          THE COURT:  I know it's been a number of pretty major

23  shifts in how those guideline adjustments could apply to you

24  recently.  Have you had enough time to have Mr. Carr answer your

25  questions about those issues?

1     DEFENDANT WARD:  Yes, Your Honor.

2     THE COURT:  Have you been happy with him as your

3  lawyer so far?

4     DEFENDANT WARD:  Yes, Your Honor.

5     THE COURT:  Okay.  Then let's go ahead and talk about

6  our guidelines in this case.  With respect to the number of

7  firearms and the in connection with another felony offense,

8  based upon the objections that were filed by Mr. Ward and the

9  lack of evidence now related to those particular adjustments, I

10 will find that those should not be applied.

11     So that leaves us with the stolen firearm adjustment.

12 Mr. Wendel, do you wish to present any evidence with respect to

13 that?  It is an adjustment that the Government bears the burden

14 of proof on.

15     MR. WENDEL:  Your Honor, having read the objection,

16 the defendant did not object to the fact that the firearm was

17 stolen; his objection was based on the defendant didn't know the

18 firearm was stolen.  With that being the case, both Application

19 Note 8(B) and the case cited by the Government in their brief

20 indicate that the defendant doesn't have to know that the

21 firearm is stolen.  The application note applies.

22     THE COURT:  In the defendant's sentencing memorandum,

23 he did say that he did not agree that the firearm had been

24 stolen, and that's on page 5 of his brief.  He denied -- here

25 it's the second line of that paragraph, "Defendant denies that

1 the weapon was stolen or that, if the weapon was stolen, he had

2 any knowledge that it was stolen."

3          Certainly he doesn't have to know under the current

4 law that the gun was stolen for the enhancement to apply, but I

5 think we do have to have some evidence that the gun was, in

6 fact, stolen, and the facts outlined in the presentence report

7 do not clearly establish that the gun seized from him was, in

8 fact, a stolen gun.

9          Do you have any evidence by way of law enforcement

10 testimony or something else that the gun that was seized from

11 him on the 26th, January 26th, was, in fact, a gun that was

12 stolen presumably on the 25th?

13          MR. WENDEL:  No, Your Honor.

14          THE COURT:  Okay.  Mr. Carr, any argument you'd like

15 to make on that particular issue?

16          MR. CARR:  Your Honor, I think the Court has correctly

17 set the record.  I think our objection was both to whether the

18 gun was stolen and then whether my client would have had any

19 knowledge of it.  I would agree that knowledge is not relevant

20 for the purposes of the sentencing; however, we did object to

21 whether the gun was actually stolen.  There's no evidence before

22 this Court that would indicate that the gun was stolen, and

23 therefore we do not believe that the enhancement listed in that

24 paragraph applies.

25          THE COURT:  I agree here.  I do find Government has

1  failed to establish by a preponderance of the evidence that the

2  gun was stolen.  The offense as outlined in the presentence

3  report does not clearly establish that essentially the -- it was

4  described as an RG Industries Model RG14 .22-caliber handgun

5  that was seized from Mr. Ward's apartment on January 26th was a

6  stolen weapon.  I don't have any evidence before me of a

7  property listing it as stolen.  I don't have an ATF check that

8  shows it was stolen.  I don't have any witness testimony that

9  would indicate this gun was stolen from anyone in particular.

10      I do have a fair amount of circumstantial evidence,

11  but most of that has been objected to and apparently now

12  recanted, and so in light of that, I just can't find that the

13  Government has proven that particular adjustment.

14      So based upon that ruling and the other issues that

15  have arisen today, we find ourselves at a base offense level of

16  24.  There are no upward adjustments.  There is a two-level

17  downward adjustment for acceptance of responsibility.

18      Is the Government moving for that third level as well?

19      MR. WENDEL:  Yes, Your Honor.

20      THE COURT:  So that results in another level being

21  removed, which gives us a total offense level of 21.  Mr. Ward

22  is a criminal history category of VI, which leaves us with an

23  advisory guideline range of 77 to 96 months' imprisonment.

24  Probation is not recommended by the guidelines.  Supervised

25  release of between one and three years is recommended.

1    The suggested fine range would be $7,500 to $75,000,

2 although here I don't intend to impose any kind of a fine, and

3 there is a $100 special assessment.

4    Mr. Wendel, with respect to a final sentence in this

5 case, what is the Government's recommendation?

6    MR. WENDEL:  The Government believes that the low end

7 of the guideline is sufficient in this case, Your Honor.

8    THE COURT:  Mr. Carr, what is Mr. Ward's

9 recommendation with respect to a sentence in this case?  And if

10 you could alert me if there are any special requests for

11 programs or placement or things of that nature as well.

12    MR. CARR:  Thank you, Your Honor.

13    Pursuant to the brief that we filed, Mr. Ward is

14 asking for a downward departure from the sentencing guidelines

15 based upon the factors found in 18 U.S.C. Section 3553.

16 Specifically, Your Honor, the Presentence Investigation Report

17 notes that my client has a fairly significant mental health

18 history, having been diagnosed with depression, anxiety,

19 schizophrenia, bipolar disorder, and PTSD, which, as I believe

20 as noted in the presentence report, is actually from his prior

21 incarceration where he witnessed some rather gruesome things.

22    Furthermore, Your Honor, in reading through the

23 Presentence Investigation Report, it outlines my client's

24 childhood and how from a very young age he was exposed to drugs

25 and violence, and that's something that is basically all he's

1  known not only in his adult life but really since adolescence.

2  So we cited the case of California vs. Brown, where

3  Justice O'Connor noted that defendants who commit criminal acts

4  that are attributable to a disadvantaged background and to

5  emotional or mental problems may be less culpable than

6  defendants that have no such excuse.

7  We believe that Mr. Ward is tailor-made for that

8  sentiment. The fact remains while Mr. Ward has a very

9  significant criminal history, as is noted in the Presentence

10  Investigation Report, pretty much all of that has to do with

11  being exposed to violence and drug use throughout his entire

12  life through pretty much anybody who would be considered to be

13  an influence upon his life.

14  However, after his last incarceration, Mr. Ward made

15  some very positive changes and he noted that he found sobriety

16  for the first time in his life and was actually able to build

17  upon that progress and, as the Court notes from some of the

18  letters that were submitted to the Court, actually became

19  involved somewhat in a church and community to the extent that

20  he was being a positive member of our society and working toward

21  becoming productive.

22  We are asking for a downward departure, Your Honor,

23  based upon these factors, to 60 months. We believe that that

24  sentence is sufficient underneath the factors that are listed in

25  Section 3553. We believe it is appropriate given the fact that

1  Mr. Ward is not similarly situated to some other individuals we

2  would see here and that perhaps his criminal activities could be

3  explained by things that were perhaps out of his control from a

4  very young age.

5          Given the recent progress that he's made in his life,

6  we would like that sentence to be as short as possible to get

7  Mr. Ward back out amongst the people that he's identified in the

8  community that are good positive influences on him, allow him to

9  raise his children, to become a protective member of society.

10         THE COURT:  Thank you, Mr. Carr.

11         Mr. Ward, this is the time in the sentencing hearing

12  when you're allowed to say what you might want to say to me or

13  to the people who are here to support you.  You don't have to

14  say anything, but I'm happy to hear anything you might wish to

15  say.

16         DEFENDANT WARD:  Thank you for allowing me to speak.

17         First I'd like to say that I'm sorry to my family for

18  letting them down again, and thank you -- thank you for

19  supporting me.

20         Like Mr. Carr said, a lot of my life has been plagued

21  by drug addiction, up until the last five years.  I was doing

22  good, taking care of a handicapped friend, staying drug-free.

23  It was just one incidence that I relapsed and this incident

24  happened.

25         So thank you for letting me talk.

1          THE COURT:  Thanks, Mr. Ward.

2          Mr. Ward, I'm sure Mr. Carr has talked to you about

3   how federal sentencings work, and you've been through the system

4   once before so you have a basic understanding of how this works,

5   but the Eighth Circuit is the court that governs judges like me

6   here in the Midwest who sentence people, and they've said that I

7   have to take three steps in imposing a sentence.

8          The first step is to look at the statutory maximum

9   penalties that could apply, and that's why at the beginning of

10  your hearing we talked about things like the maximum penalty and

11  the $250,000 fine that could potentially apply.

12         The second step is to consider what the guidelines

13  advise, and that's why we spent time talking about levels up and

14  levels down and criminal history categories and why we spent all

15  the time trying to figure out whether you were an armed career

16  criminal or not.

17         The third step is, in my view, the most important

18  step, and it's what's called a 3553(a) analysis.  That's

19  something that means nothing to people who don't practice

20  federal criminal law, but it's basically a list of circumstances

21  about the crime and about the person who committed it.  And in

22  my view, this is the most important step of all of those that

23  the judges take at the time of sentencing.

24         You certainly had a rough childhood, there's no

25  question about that.  Unfortunately, that has manifested in a

1  very violent adulthood for you, and that's quite concerning.

2        This particular offense on paper is quite simple; you

3  had a gun, you were a felon.  But the facts of it are that you

4  stabbed a man at the gas station, and while the police were

5  investigating that stabbing, they found a firearm at your

6  apartment as well as drug paraphernalia and ammunition for that

7  gun.

8        You are a 35-year-old man.  Your childhood, which we

9  talked about, was very chaotic.  You were raised in an

10  environment essentially associated with a motorcycle club.  You

11  saw people stabbed, shot, assaulted.  That was a regular part of

12  your existence as a child, and I can only guess how that

13  impacted you and what you see as a normal view of the world.  By

14  10 you were using drugs, by 13 you were selling drugs.  Again,

15  those aren't real surprising given the way in which you were

16  being raised.

17        You, unfortunately, have this extremely long,

18  extremely violent criminal history, and I have to consider that

19  in deciding what to do with you.  You have some lesser offenses

20  and then you have some very serious offenses, and over and over

21  again you've been unable to do well under supervision.

22        And so we've got you start with a theft and probation

23  is revoked and then you get an OWI and probation is revoked and

24  then you harbor a runaway and probation is revoked.

25        You have your first assault conviction where you kick

1 a woman in the head, then you get a domestic abuse assault

2 conviction for punching your wife in the stomach, and then you

3 cart her away from the house after she fell to the ground after

4 you punched her, you leave your 7-month-old baby in the house

5 crying alone while this is all going on, and again probation is

6 revoked on that particular charge.

7 Then you have the assault with a dangerous weapon

8 which involves you stabbing not one but two different men, and

9 again parole is revoked. Then assault using a dangerous weapon

10 where you threaten somebody else with a gun, then driving

11 without a license, harassment for threatening with a knife an

12 ex-girlfriend who you forced out of her car and into her house

13 while threatening to slit her throat, possession of marijuana,

14 conspiracy to manufacture methamphetamine.

15 And another federal conviction for illegal possession

16 of firearms that you just got off paper for in April of 2012.

17 Again, there you had supervised release revoked in that case as

18 well, and you literally came off paper in April of 2012, and

19 this all happens in January of 2013, so nine months later this

20 is all going on.

21 You have three children, and I know from letters that

22 they clearly care about you and support you, and you do have, as

23 your lawyer said, some very serious mental health issues, very

24 serious mental health issues, that undoubtedly have contributed

25 to what's going on with you, and very, very serious substance

1  abuse issues, including addictions to heroin, methamphetamine,

2  marijuana, alcohol, and prescription drugs.

3          Now, on the plus side you've got a college education

4  or at least some college education.  You worked hard.

5  Interestingly enough, through all of this you've managed to

6  work, which tells me you have it in you to be a productive

7  person.

8          I was glad to hear that you had periods of sobriety so

9  you know what that feels like, you know what you're working

10  towards, but I look at your history of violence and it's very

11  concerning.  And it's not only violence, it's violence with

12  weapons.  And, you know, they arrest you in this case, and what

13  do you have?  You have more knives.  I mean, you just can't --

14  even though felons can have knives, they are apparently not a

15  good idea for you to have, and your judgment is obviously

16  impaired in those kinds of scenarios.

17          So looking at all of those facts, I do think a

18  guideline sentence for you is an appropriate sentence, and in

19  your particular case, given the proximity of this crime to the

20  last crime and the serious nature of this particular crime, I

21  actually think the top of your range is the appropriate place to

22  sentence you.

23          So I do order a sentence of 96 months in prison.  I

24  will recommend to the Bureau of Prisons that they place you as

25  close to your family as possible unless you've got some other

1  request.  I know you've done some time in federal prison.  Is

2  there a particular facility that you prefer?

3           DEFENDANT WARD:  Oxford or Pekin.

4           THE COURT:  Okay.  I'll recommend that if you qualify

5  for either Oxford or Pekin that they place you in those

6  locations and if you don't qualify for those that they place you

7  as close as possible to your family.

8           Is most of your family located here in this area?

9           DEFENDANT WARD:  Yes, Your Honor.

10          THE COURT:  Okay.  So I'll ask them to place you as

11 close to Des Moines as possible, then.

12          Upon release you will serve a term of three years of

13 supervised release.  As part of that supervised release, you'll

14 report to the probation office within 72 hours of coming out of

15 prison.  You'll have all the standard conditions of supervision

16 that you are familiar with; you can't use drugs, you can't have

17 guns, you can't commit new crimes, things like that.

18          You'll also have some special conditions of

19 supervision that relate to individualized and particularized

20 needs that you have based upon your history, and all of these

21 particular special conditions are aimed at either helping you

22 get treatment you need or helping keep probation officers who

23 may be supervising you safe while they're doing that.

24          The first special condition is that you continue to

25 participate in a program of testing and treatment for substance

1  abuse.  And, again, the probation office will explain that to

2  you more.  If you're required or if they recommend any kind of

3  inpatient or outpatient treatment or medication, you're going to

4  have to comply with what they recommend.

5            Because you do have a history of alcohol abuse, I am

6  going to prohibit you from consuming alcohol at all during the

7  term of supervised release.  And because you cannot consume

8  alcohol, you also cannot be in businesses that make more than

9  half of their income from the sale of alcohol.  What that means

10 is you can go into a restaurant that happens to serve alcohol,

11 you can't order the alcohol, but you can't be in bars that just

12 happen to serve nachos or something along those lines.  Does

13 that make sense?

14            DEFENDANT WARD:  Yes, Your Honor.

15            THE COURT:  You're going to continue to participate in

16 mental health evaluation and treatment as recommended by the

17 probation office.  You've got some pretty serious conditions,

18 and they're going to continue to help you tackle those.  Could

19 be as simple as a chemical imbalance in your brain that requires

20 medication.

21            It's a miserable way to live life the way you've been

22 living it, and that's something you can't fix.  You can't will

23 away a biological chemical imbalance.  Medication will help you

24 with that.

25            You're also going to participate in a program of anger

1  management and domestic violence prevention, again, at the

2  direction of the probation office, to help resolve some of those

3  issues that we've seen crop up in your past.

4  You're going to participate in a program of -- a

5  cognitive behavioral treatment program.  That's basically

6  journaling, thinking exercises that will help you as you kind of

7  reacclimate into society when you come out.

8  You are prohibited from being a part of any particular

9  criminal gang.  That's going to include groups like the

10  skinheads, which you have some affiliation with, the motorcycle

11  gang that you grew up around, or any other criminal gang.  You

12  can't be a prospect, a member, or associate in any of those

13  gangs.

14  If you aren't released from BOP at the end of your

15  sentence to go to a halfway house, then you'll spend your first

16  120 days of supervised release or up to 120 days in a halfway

17  house setting.  That will help you get a job, get a place to

18  live.  You can earn up to six hours a week of good time passes

19  while you're living at that program, assuming you're eligible

20  based on following their rules and regulations.

21  The last condition is what's called a search

22  condition.  What that means is that the probation office has my

23  authority to search you or your house, your car or your business

24  for evidence if they have a good reason to believe that you have

25  violated the law or you're not complying with these conditions

1  of supervision we talked about.

2          They aren't going to come in and break your things or

3  scare your family, come in the middle of night, things like

4  that, but if they come and do a home visit and you smell of

5  alcohol or they smell marijuana or they see evidence of, you

6  know, guns and things laying around, then they're going to come

7  in and take a look around.  And they can bring the marshals with

8  them for their safety or yours as part of that supervision.

9          I will order you pay the $100 special assessment.  As

10 you know from having been through the system once before, there

11 are some benefits to getting that paid off before you arrive at

12 prison so you don't have to take, you know, 25 cents out of

13 every paycheck to pay that off.  So if you are able to pay that

14 or borrow the money to pay it before you leave, that's just one

15 less thing for you to worry about when you arrive.

16         I do find you don't have the ability to pay a fine and

17 no fine will be imposed.  I will order that you forfeit the RG

18 Industries Model RG14 .22-caliber revolver and assorted

19 ammunition that was seized from you in January of 2013 as was

20 otherwise outlined in the preliminary order of forfeiture that

21 was filed on June 10th of 2014.

22         The last thing I want to talk to you about is your

23 right to appeal.  You have 14 days from today to appeal the

24 decision that I have just imposed.  If you don't file an appeal

25 in the next 14 days, you forever give up your right to appeal

1    this particular sentence.  If you decide you want to appeal, you

2    just need to let Mr. Carr know and he'll take care of getting

3    the paperwork filed.

4            Mr. Carr, were you appointed in this case?

5            MR. CARR:  I am, Your Honor.

6            THE COURT:  Then that won't cost you anything.

7    Mr. Carr will continue to assist you throughout that appeal

8    process.

9            What is really important is that Mr. Carr knows

10   whether you want to appeal or not.  A lot of defendants sitting

11   where you're sitting are feeling all kinds of things and they're

12   sure they told their lawyer one thing and their lawyer is sure

13   they heard something entirely different, and years down the road

14   we have to have a hearing where one lawyer testifies against a

15   client, and that's not good for anybody.

16           So the safest thing to do is put it in writing, "I

17   do," or, "I do not want to appeal."  You sign it and you date it

18   and give it to Mr. Carr and it protects both of you.  But if for

19   whatever reason you don't want to write it down, you just have

20   to let him know in the next 14 days, a telephone call or

21   whatnot, that you want that paperwork filed, and he'll take care

22   of getting that filed for you.

23           THE COURT:  Mr. Wendel, do you have any counts to be

24   dismissed?

25           MR. WENDEL:  No.  It was a one-count indictment.

1          THE COURT:  Mr. Ward, I saw as I was talking to you

2    about some of the facts of your case that you reacted to

3    something I said that perhaps was wrong.  Did you have anything

4    you wanted me to correct as part of the record before we end

5    here today?

6          DEFENDANT WARD:  Just when I was on federal probation

7    I was never violated.

8          THE COURT:  Okay.

9          DEFENDANT WARD:  They just noted some -- just noted

10   some things.

11         THE COURT:  Okay.  So like a modification or a notice

12   of problems?

13         DEFENDANT WARD:  They never even modified me.  They

14   just, I mean, didn't even really say anything to me.

15         THE COURT:  Okay.

16         DEFENDANT WARD:  Just one time I got a warning for

17   being around my wife because she's a felon.

18         THE COURT:  Okay.

19         DEFENDANT WARD:  It was just things like that.

20         THE COURT:  Thank you for correcting that part of the

21   record.  I'm sorry that I made that mistake in my recitation.  I

22   can tell you that whether you were officially revoked or not

23   wouldn't have changed the decision I made with respect to the

24   sentence.

25         Anything else that we need to talk about here today?

1          MR. WENDEL:  No, Your Honor.

2          THE COURT:  Mr. Carr?

3          MR. CARR:  Nothing further, Your Honor.

4          THE COURT:  We are adjourned.  Thanks.

5          (Proceedings concluded at 2:25 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2            I, Kelli M. Mulcahy, a Certified Shorthand Reporter of

3    the State of Iowa and Federal Official Realtime Court Reporter

4    in and for the United States District Court for the Southern

5    District of Iowa, do hereby certify, pursuant to Title 28,

6    United States Code, Section 753, that the foregoing is a true

7    and correct transcript of the stenographically reported

8    proceedings held in the above-entitled matter and that the

9    transcript page format is in conformance with the regulations of

10   the Judicial Conference of the United States.

11           Dated at Des Moines, Iowa, this 2nd day of October,

12   2014.

13

14

15                          /s/ Kelli M. Mulcahy
                            Kelli M. Mulcahy, CSR No. 941, RMR, CRR
16                          Federal Official Court Reporter

17

18

19

20

21

22

23

24

25